# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

PAUL MATHIESON,

      Petitioner,

v.                                                  **CASE NO:  8:04-CV-265-T-30MAP**
                                                       Crim. Case No: 8:98-CR-322-T-30MAP

UNITED STATES OF AMERICA,

      Respondent.

_____/

# <u>ORDER</u>

THIS CAUSE comes before the Court upon Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) filed on February 13, 2004, Memorandum in support (CV Dkt. #2) filed on February 13, 2004, Petitioner's Notice of Clarification (Dkt. #18) filed on June 1, 2004, Petitioner's Second Notice of Clarification (Dkt. #20) filed on June 3, 2004, Petitioner's 103-page Amended Memorandum in support (CV Dkt. #25) filed on June 14, 2004, Petitioner's Third Notice of Clarification (Dkt. #26) filed on June 21, 2004, the Government's Response (CV Dkt. #36) filed on August 16, 2004, Petitioner's Reply (Dkt. #50) filed on February 18, 2005, and Petitioner's Notice of Correction (Dkt. #52) filed on February 23, 2005.  Upon consideration of the foregoing, the Court determines that the petition should be denied.

## Background

Petitioner, Paul Mathieson  (hereinafter referred to as "Mathieson" or "Petitioner") originally retained Michael Gonzalez to represent him in this matter.  Subsequently, Petitioner moved to represent himself and have Mr. Gonzalez remain as stand by counsel. On March 1, 2001, the motion was granted but Mr. Gonzalez withdrew completely and Fred Vollrath was appointed as stand by counsel.  On April 4, 2001, Petitioner filed a motion to have an attorney appointed to represent him.  Mr. Vollrath was appointed as counsel on April 9, 2001.  Petitioner pled guilty on June 1, 2001, to one count of racketeering, in violation of 18 U.S.C. §1962(d) pursuant to a written plea agreement.  That plea agreement, in pertinent part, provided as follows:

A.    Particularized Terms

2.    Maximum Penalties

Count One carries a maximum sentence of 20 years imprisonment, a $250,000 fine, a term of supervised release of five (5) years, and a special assessment of $50 per felony count for offenses committed prior to April 24, 1996, $100 per felony count thereafter; for organizations the amounts are "$200" and "$400" respectively, said special assessment to be due on the date of sentencing.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

. . .

9.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant

receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

. . .

B.      Standard Terms and Conditions

        1.      Restitution, Special Assessment and Fine

        The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. §3663A, for all offenses described in 18 U.S.C. §3663A(c)(1) (limited to offenses committed on or after April 24, 1996); and the Court may order the defendant to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. §3663 (limited to offenses committed on or after November 1, 1987) or §3579, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.  On each count to which a plea of guilty is entered, the Court shall impose a special assessment, to be payable to the Clerk's Office, United States District Count, and due on date of sentencing.  The defendant understands that this agreement imposes no limitation as to fine.

. . .

        4.      Sentencing Guidelines and Recommendations

        It is understood by the parties that the Court is neither a party to nor bound by this agreement.  The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office.  The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence and the sentencing guidelines, if any, applicable to defendant's case will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant understands that the Court is required to consider any applicable sentencing guidelines but may depart from these guidelines under some circumstances.  Defendant acknowledges that defendant and defendant's attorney have discussed the sentencing guidelines and the defendant

understands how the guidelines are applicable to defendant's case. Defendant further understands and acknowledges that any discussions between defendant and defendant's attorney and the attorney or other agents for the government regarding the potential application of the sentencing guidelines to defendant's case and any recommendations by the government are not binding on the United States Probation Office or the Court and that, should any recommendations be rejected, and regardless of the guidelines calculated by the Probation Office or the Court, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

5. <u>Appeal of Sentence; Waiver</u>

The defendant understands and acknowledges that defendant's sentence will be determined and imposed in conformance with the Comprehensive Crime Control Act of 1984 and the federal sentencing guidelines. Defendant is also aware that a sentence imposed under the sentencing guidelines does not provide for parole. Knowing these facts, the defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum set forth for the offense and pursuant to the sentencing guidelines and expressly waives the right to appeal defendant's sentence, directly or collaterally, on any ground, including the applicability of the "safety valve" provisions contained in 18 U.S.C. §3553(f) and USSG §5C1.2, except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. §3742(b), the defendant is released from this waiver and may appeal the sentence as authorized by 18 U.S.C. §3742(a).

. . .

8. <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without the promise of benefit of any kind (other than the concessions contained herein), and without threats, force,

intimidation, or coercion of any kind.  The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any).  The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands the defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

9.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those facts beyond a reasonable doubt.

FACTS

Between December 1994 and continuing up to and including April 1, 1998, ALFREDO CARRATALA and Paul Mathieson conspired together with others, both known and unknown, to commit acts against the United States, namely, to transport in interstate commerce, currently and items having a value in excess of $5000, which they knew to have been stolen.  As part of this conspiracy, the defendant and others targeted pawn shops, jewelry stores, and federally insured credit unions for theft.

On or about February 4, 1995, PAUL MATHIESON and other members of the group burglarized Florida Discount Jewelers in Winter Park,

Florida, and obtained approximately $1.5 million of jewelry.

On January 3 and 4, 1997, PAUL MATHIESON and other members of the group committed a burglary at Love's Jewelry, Miami, Florida, and obtained approximately $600,000.00 of jewelry and other property.

On March 16, 1997, ALFREDO CARRATALA, PAUL MATHIESON, and other members of the group committed a burglary at Phoenix Jewelry, Miami, Florida, and obtained approximately $2 million in jewelry, gold and precious stones.

On April 20, 1997, ALFREDO CARRATALA and PAUL MATHIESON committed a burglary at Suncoast Toys, Clearwater, Florida, and obtained approximately $11,000.00 in coins. That same evening ALFREDO CARRATALA, PAUL MATHIESON, and other members of the group also committed a burglary at Silver Mill Bingo, Tampa, Florida, and obtained approximately $11,000.00. They also took a safe from Silver Mill Bingo which was later recovered from a drainage ditch next to Valerio Wholesale, a warehouse rented by ALFREDO CARRATALA, in Clearwater, Florida.

On April 30, 1997, ALFREDO CARRATALA, PAUL MATHIESON, and other members of the group committed a burglary of 49th Street Pawn, Pinellas Park, Florida, and obtained approximately $300,000.00 of currency, jewelry, and other property, and 23 firearms.

On May 18, and 19, 1997, ALFREDO CARRATALA and other members of the group committed a burglary of Maurice Jewelers in Miami, Florida and obtained $1.5 million in jewelry. Much of this jewelry was taken to New York to be sold.

On June 8, 1997, PAUL MATHIESON committed a burglary of Spectrum Diamonds, Boca Raton, Florida, and obtained approximately $135,000.00 in jewelry. On that same night, PAUL MATHIESON committed a burglary of AIDC Jewelers, Deerfield Beach, Florida. While he was in the business, the police arrived and MATHIESON fled, leaving his truck with the jewelry from Spectrum Diamonds and his identification.

On July 26 and 27, 1997, ALFREDO CARRATALA, PAUL MATHIESON, and other members of the group committed a burglary at Antique Silver House, Seminole, Florida, and obtained approximately

$111,000.00 of jewelry, coins, silver bars, and other property.

On August 31, 1997, ALFREDO CARRATALA and other members of the group committed a burglary at Franky's Jewelry, Miami, Florida, and obtained approximately $1 million in cash and jewelry.  Much of the jewelry from this burglary was taken to New York to be sold.

On September 20, 1997, PAUL MATHIESON and other members of the group committed a burglary of 14 Karat Enterprises, Clearwater, Florida, and obtained approximately $300,000.00 of jewelry.  The jewelry was recovered the same night from a vehicle rented by one of the members of the group.

On October 4, 1997, ALFREDO CARRATALA and other members of the group committed a burglary of Samson Jewelers, Edison, New Jersey, and obtained approximately $300,000.00 in jewelry.  Much of the jewelry from this burglary was taken to New York to be sold.

On October 28 and 29, 1997, ALFREDO CARRATALA and other members of the group committed a burglary of El Brillante, Miami, Florida, and obtained approximately $100,000.00 in jewelry.  Much of the jewelry from this burglary was taken to New York to be sold.

On November 24 and 25, 1997, ALFREDO CARRATALA and other members of the group traveled out of Florida and committed a burglary at Designing Jewelers, East Longmeadow, Massachusetts, and obtained approximately $100,000.00.  All of this jewelry was taken to New York to be sold.

On December 8, 1997, ALFREDO CARRATALA, PAUL MATHIESON, and other members of the group traveled out of Florida and committed a burglary at Hanson Jewelry Store, Springfield, Massachusetts, and obtained approximately $1 million in jewelry.  This jewelry was transported to Florida.

On January 22, 1998, ALFREDO CARRATALA and other members of the group committed a burglary of an ATM at GTE Federal Credit Union, Clearwater, Florida.  CARRATALA used a stolen vehicle to transport the ATM from the scene to a warehouse.  The safe was cut open and approximately $30,000.00 removed.

On February 9, 1998, ALFREDO CARRATALA and other members of the group attempted to burglarize the ATM for GTE Federal Credit Union located at 11248 West Cedar Lake Drive, Crystal River, Florida. During this attempt, which was captured on video, at least three males utilizing a large roll off type commercial vehicle used to carry dumpsters, wrapped a cable around the ATM and dislodged it from its base. The cable snapped and the subjects fled the area.

On or about February 12, 1998, ALFREDO CARRATALA and other members of the group burglarized Angels Jewelers located in McAllen, Texas. Approximately $100,000.00 of jewelry was obtained. All of the jewelry from this burglary was taken to New York to be sold.

In early March, the PCSO and the FBI learned that CARRATALA and his group were planning to conduct jewelry store burglaries in the McAllen, Texas area. Agents of the FBI monitored a transponder placed on a vehicle used by the group.

On March 15, 1998 through March 16, 1998, FBI agents observed this group conduct a burglary of the Gold Connection in McAllen, Texas. Agents then arrested CARRATALA and others.

10.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

. . .

On June 6, 2001, five days after entering it, Petitioner filed a motion to withdraw his guilty plea. On August 28, 2001, Petitioner filed a motion to have Mr. Vollrath removed as his attorney and have a new attorney appointed. That motion was granted on September 5, 2001, and Dan Daly, Esquire, was appointed as counsel. On September 20, 2001, this Court denied the Motion to Withdraw Guilty Plea.

The Petitioner's sentencing hearing took place over three days: November 15, 2002, November 28, 2002, and December 14, 2001.  Petitioner was represented by attorney Daniel Daly at the beginning of sentencing.  Upon Petitioner's oral motion to represent himself, he was allowed to proceed without counsel and Mr. Daly remained as stand-by counsel.  On December 14, 2001, the Court upwardly departed from the sentence called for by the guidelines and sentenced the Petitioner to the statutory maximum of two hundred forty (240) months of imprisonment to run concurrently with a sentence imposed in the Southern District of Florida in case number 98-504-CR-Gold, to be followed by a three (3) year term of supervised release.

Mathieson appealed his sentence to the United States Court of Appeals for the Eleventh Circuit, appeal number 02-10138-GG, raising the following issues:

1.  The district court abused its discretion in denying the Petitioner's motion to withdraw his plea;

2.  The district court abused its discretion by upwardly departing from the guidelines in sentencing Petitioner to the statutory maximum;

3.  The district court misapplied the burglary guideline to the Petitioner, who was convicted of membership in a racketeering enterprise engaged in interstate transportation of stolen property; and

4.  The district court misapplied the obstruction of justice guideline.

The Eleventh Circuit affirmed the disposition of the case.  United States v. Mathieson, 54 Fed. Appx. 690 (11th Cir. 2002).

Petitioner has now timely filed his motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. §2255.  He raises the following fourteen (14) grounds:

**Ground One:**      Mathieson's sentence was imposed in violation of his right to due process of law.

**Ground Two:**      Mathieson's sentence was imposed in violation of the express and implied terms of the agreement.

**Ground Three:**    Mathieson's sentence was imposed in violation of his right to counsel.

**Ground Four:**     Mathieson's sentence was imposed in violation of his right to fair and impartial treatment by the Court.

**Ground Five:**     Mathieson's guilty plea is invalid due to the waiver of his right to appeal not being knowingly or intelligently entered.

**Ground Six:**      Mathieson's guilty plea was not knowingly or intelligently entered due to defense counsel Frederick W. Vollrath's ineffectiveness and/or failure to provide meaningful close assistance of counsel.

**Ground Seven:**    Mathieson's sentence was imposed in violation of the law due to defense counsel Daniel F. Daly's ineffectiveness.

**Ground Eight:**    Mathieson's unlawful sentence was not corrected due to appellate counsel Daniel F. Daly's ineffectiveness.

**Ground Nine:**     Mathieson's conviction and/or his sentence is unlawful due to defense/appellate counsel Daniel F. Daly's conflict of interest.

**Ground Ten:**      Mathieson's sentence is unlawful due to the district courts imposition of improper orders of restitution.

**Ground Eleven:**   Mathieson's conviction is unlawful due to defense/appellate counsel Daniel F. Daly's ineffectiveness.

**Ground Twelve:**   Mathieson's conviction is unlawful due to the district court judges bias, prejudice, and lack of impartiality towards Mathieson.

**Ground Thirteen:** Mathieson's guilty plea was not knowingly, intelligently, and/or voluntarily entered due to his mental, emotional, and/or psychological disorders.

**Ground Fourteen:**   The government committed a <u>Brady</u> violation when it failed to disclose grand jury records to the Petitioner prior to the entering of his guilty plea.

## Standard of Review

Title 28 U.S.C. §2255 sets forth the framework for reviewing a federal prisoner's sentence for any of the following four reasons: (1) the sentence was imposed in violation of the Constitution of the United States; (2) the court was without jurisdiction to impose such a sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack.  28 U.S.C. § 2255.  Case law establishes that only constitutional claims, jurisdictional claims, and claims of error so fundamental as to have resulted in a complete miscarriage of justice are cognizable on collateral attack.  *See* <u>United States v. Addonizio</u>, 442 U.S. 178, 185 (1979); <u>Hill v. United States</u>, 368 U.S. 424, 428 (1962); <u>see also</u> <u>Richards v. United States</u>, 837 F.2d 965, 966 (11th Cir. 1988).

Generally, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding. <u>See</u> <u>Greene v. United States</u>, 880 F.2d 1299, 1305 (11th Cir. 1989) (and the cases cited therein), *cert. denied*, 494 U.S. 1018 (1990).  A ground of error is usually "available" on direct appeal when its  merits can be reviewed without further factual development.

To establish a prima facie claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). Deficient performance is performance which is objectively unreasonable under prevailing professional norms.  <u>Id</u>. at

688. Prejudice results when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The Eleventh Circuit has held that "[w]hen applying Strickland, we are free to dispose of ineffectiveness claims on either of its two grounds." Oats v. Singletary, 141 F.3d 1018, 1023 (11th Cir. 1998).

## Discussion

The Court will now discuss the grounds raised by Petitioner.  Where more than one ground is related to the same subject matter, the Court may address those grounds together.

**Ground One:**      Mathieson's sentence was imposed in violation of his right to due process of law.

**Ground Two:**      Mathieson's sentence was imposed in violation of the express and implied terms of the agreement.

Grounds one and two both deal with the appropriateness of the sentence entered by this Court.  In ground one, Petitioner asserts that the burglary guidelines should not have been incorporated into the racketeering guideline in calculating his guideline range.  Ground two asserts that his plea agreement guaranteed him a low-end guideline sentence and the Court's upward departure to the statutory maximum violated the agreement.  Both grounds fail because they are either factually inaccurate and/or waived by his plea agreement.

In fashioning his sentence, the Court calculated Defendant's guideline sentencing range and then, because of the extensive number of Defendant's criminal violations, upwardly departed to the statutory maximum of 240 months.  Mathieson's claim that the government and the Court were bound to give him the low end of the guidelines by the terms

of the plea agreement is factually incorrect.  The government only agreed to not oppose Mathieson's request for a low end sentence.

Section A.9. of Mathieson's plea agreement provides:

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court.  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

The government did exactly as it agreed to do by taking no position regarding a low end sentence - it neither opposed nor recommended it.  And, in any event, Petitioner's plea agreement is clear that the Court is not bound by a recommendation from either party that the sentence be at the low end of the applicable guideline range.

Also, Petitioner incorrectly describes his ability to appeal the Court's upward departure to the statutory maximum.  Petitioner specifically reserved the right to appeal this Court's upward departure.  (See paragraph B.5. of the plea agreement.)  In fact, Petitioner did appeal the upward departure (a claim Petitioner now describes as "frivolous" at page 74 of his Amended Memorandum) and this ground was rejected by the Eleventh Circuit.  His other grounds concerning his sentence were also raised on appeal and were rejected by the Eleventh Circuit because of his appeal waiver in his plea agreement.  (See paragraph B.5 of the plea agreement.)  A defendant's waiver of the right to appeal "directly or collaterally" encompasses his right to challenge his sentence in a §2255 proceeding.  United States v. Cockerham, 237 F.3d 1179 (10th Cir. 2001).  An appeal waiver is valid if knowingly and

voluntarily made.  <u>United States v. Bushert</u>, 997 F.2d 1343 (11th Cir. 1993).

Therefore, grounds one and two will be denied.

**Ground Three:**     Mathieson's sentence was imposed in violation of his right to counsel.

**Ground Five:**      Mathieson's guilty plea is invalid due to the waiver of his right to appeal not beinot guilty knowingly or intelligently entered.

**Ground Six:**       Mathieson's guilty plea was not knowingly or intelligently entered due to defense counsel Frederick W. Vollrath's ineffectiveness and/or failure to provide meaningful close assistance of counsel.

**Ground Thirteen:**  Mathieson's guilty plea was not knowingly, intelligently, and/or voluntarily entered due to his mental, emotional, and/or psychological disorders.

In all of the foregoing grounds, Petitioner asserts various arguments why his guilty plea should have been set aside.  His reasons range from improper actions by the Court (both District Judge and Magistrate Judge) to his alleged mental, emotional and psychological disorders.  At the outset, this Court notes that all of these arguments were made prior to sentencing and this Court found them to be without merit.  Petitioner appealed these issues to the Eleventh Circuit and they were rejected.  The Eleventh Circuit said:

> [T]here is no evidence of bad faith on the government's part, and Mathieson failed to demonstrate a "fair and just" reason for allowing him to withdraw his guilty plea.  The district court therefore acted well within its discretion in denying his motion to withdraw the plea.

54 Fed. Appx. 690, 694 (11th Cir. 2002).

Like an appeal waiver, a guilty plea forecloses many claims.  Guilty pleas waive all but jurisdictional claims up to the time of the plea.  Stano v. Dugger, 921 F.2d 1125, 1150 (11th Cir.), *cert. denied*, 502 U.S. 835 (1991), and forecloses most claims from collateral attack.  See United States v. Broce, 488 U.S. 563, 569 (1989).  This waiver includes constitutional claims. See Wilson v. United States, 962 F.2d 996 (11th Cir. 1992) (pre-plea ineffectiveness waived).

After a conviction based on a guilty plea has become final, a petitioner may challenge only the knowing and voluntary nature of the plea unless the record demonstrates that the district court lacked the power to enter the conviction or impose the sentence.  United States v. Kaiser, 893 F.2d 1300 (11th Cir. 1990).  In the context of a §2255 motion, a defendant who enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality of the conviction, and only an attack on the voluntary and knowing nature of the plea can be sustained.  Broce, supra.

Once again, Petitioner claims his guilty plea was not entered knowingly, intelligently or voluntarily due to myriad reasons.  But Petitioner's claims are belied by his  statements made in open court.  Those statements are presumed to be true.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  These statements are not overcome by bald assertions of misunderstanding.  Harvey v. United States, 850 F.2d 388 (8th Cir. 1988).  When Petitioner entered his guilty plea, he made the following statements:

> THE COURT:  Mr. Mathieson, you have been placed under oath.  Do you understand that you are under oath, and if you answer any of my questions falsely, your answers may later be used against you in another prosecution for

perjury or making a false statement?

THE COURT: Yes, I understand, Your Honor.

DEFENDANT MATHIESON: Yes, I understand, Your Honor.

THE COURT: How old are you?

DEFENDANT MATHIESON: Forty-one.

THE COURT: How far did you go in school?

DEFENDANT MATHIESON: High school equivalency and four and a half years college.

THE COURT: All right.  So you can read and write?

DEFENDANT MATHIESON: yes.

THE COURT: Have you been treated recently for any mental illness or addition to narcotic drugs of any kind?

DEFENDANT MATHIESON: No, sir.

THE COURT: Are you currently under the influence of any drug, medication, or alcoholic beverage of any kind?

DEFENDANT MATHIESON: No, Your Honor.

THE COURT: Have you received a copy of the indictment pending against you, that is, the written charges made against you in this case?

DEFENDANT MATHIESON: Yes, I have.

THE COURT: Have you had the opportunity to discuss and have you fully discussed those charges and the case in general with Mr. Vollrath, your lawyer?

DEFENDANT MATHIESON: Yes, I have.

THE COURT: Are you fully satisfied with Mr. Vollrath's representation and advice given to you in this case?

Page 16 of  31

DEFENDANT MATHIESON: Yes, Your Honor.

THE COURT: Is your willingness to plead guilty the result of discussions that you and your attorney have had with the attorney for the Government?

DEFENDANT MATHIESON: Yes.

THE COURT: And I believe you have signed a written plea agreement; is that correct?

DEFENDANT MATHIESON: That's correct, Your Honor.

THE COURT: Before you signed the plea agreement, did you have the opportunity to read it?

DEFENDANT MATHIESON: Yes, I did.

THE COURT: Did you have the opportunity to discuss the plea agreement with your lawyer before you signed it?

DEFENDANT MATHIESON: Yes, I did.

THE COURT: Does the plea agreement represent in its entirety any and all understandings you have with the Government?

DEFENDANT MATHIESON: Yes, it is.

THE COURT: Do you understand the terms of the plea agreement?

DEFENDANT MATHIESON: Yes, I do.

THE COURT: Has anyone made any other or different promise or assurance of any kind to you in an effort to induce you to plead guilty in this case?

DEFENDANT MATHIESON: Other than what's in the plea agreement, no.

THE COURT: That's right.  Has anyone attempted in any way to force you to plead guilty in this case?

DEFENDANT MATHIESON: No, sir.

THE COURT: Are you pleading guilty of your own free will because you are guilty?

DEFENDANT MATHIESON: Yes, sir.

THE COURT: Do you understand that the offense to which you are pleading guilty is a felony offense; that if you plea is accepted, you will be adjudged guilty of that offense, and that such adjudication may deprive you of valuable civil rights.  Such as the right to vote, the right to hold public office, the right to serve on a jury, and the right to possess any kind of firearm?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: You're pleading guilty to Count 1 of the third superseding indictment charging you with Rico conspiracy in violation of 18 USC, Section 1962, Sub D which carries a maximum sentence of 20 years imprisonment, a 250,000 dollar fine, a term of supervised release of five years, and a special assessment of 100 dollars?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: Do you understand that if you violate the conditions of supervised release, you can be given additional time in prison?

DEFENDANT MATHIESON: Yes, Your Honor, I know that.

THE COURT: Do you understand that in this plea agreement, you have agreed to restitution of $5.7 million?

DEFENDANT MATHIESON: Yes.

THE COURT: You also understand that you have agreed to forfeiture of assets?

DEFENDANT MATHIESON: Yes.

THE COURT: You understand all of these possible consequences of your plea?

DEFENDANT MATHIESON: Completely.

THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow determining the sentence in a criminal case.

Have you and your attorney talked about how the sentencing guidelines might apply in your case?

DEFENDANT MATHIESON: Yes, we have, Your Honor.

THE COURT: Do you understand that the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed, and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, and that the sentence imposed may be different from any estimate your attorney may have given you?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: Do you also understand that after your guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: Do you also understand that parole has been abolished, and that if you are sentenced to sentence [sic] , you will not be released on parole?

DEFENDANT MATHIESON: Yes, I understand that also.

THE COURT: Do you also understand that under some circumstances, you or the Government may have the right to appeal any sentence that I impose?

DEFENDANT MATHIESON: Yes, I understand that also.

THE COURT: In your plea agreement, you have expressly waived the right to appeal your sentence directly or collaterally on any ground, including the applicability of the Safety Valve provisions contained in 18 USC, Section 3553, Sub F and the United States Sentencing Guidelines Section 5(c)1.2 except for an upward departure by the sentencing judge, a sentence above the statutory maximum, or a sentence in violation of the law apart from the sentencing guidelines?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: Do you understand that you have a right to plead not guilty to the offense charged against you and to persist in that plea?

DEFENDANT MATHIESON: Yes, I do.

THE COURT: Do you understand that you would then have the right to a trial by jury; at that trial, you would be presumed to be innocent, and the Government would have to prove your guilt beyond a reasonable doubt. and that you would have the right to the assistance of counsel for your defense; the right to see and hear all of the witnesses and have them cross-examined in your defense?

DEFENDANT MATHIESON: Yes, I understand that.

THE COURT: You would have the right on your own part to decline to testify unless you voluntarily elected to do so in your own defense, and the right to the issuance of subpoenas or compulsory process to compel the attendance of witnesses to testify in your defense?

DEFENDANT MATHIESON: Yes, I understand that also.

THE COURT: You understand that should you decide not to testify or put on any evidence these facts cannot be used against you?

DEFENDANT MATHIESON: Yes, I understand.

THE COURT: You further understand that by entering a plea of guilty, if that plea is accepted by the Court, there will be no trial, and you will have waived or given up your right to a trial as well as those other rights associated

with the trial as I have just described them?

DEFENDANT MATHIESON: Yes, I understand that also.

Doc. CR-734, pages 19-26.

Petitioner's claims of mental, emotional and psychological disorders fare no better.

Petitioner fails to support these claims with anything more than his bald assertions. He does

not claim to be under a doctor's care nor does he point to any medical report or record

evidence to support any such assertion. To the contrary, he denied any recent treatment for

a mental condition in his plea colloquy. He stated in open court that he had been properly

advised and that he understood the consequences of his plea. He will not now be heard to

contend that he swore falsely. United States v. Stitzer, 785 F.2d 1506 (11th Cir.), *cert.*

*denied*, 479 U.S. 823 (1986).

Therefore, these grounds will be denied.

**Ground Six:** Mathieson's guilty plea was not knowingly or intelligently entered due to defense counsel Frederick W. Vollrath's ineffectiveness and/or failure to provide meaningful close assistance of counsel.

**Ground Seven:** Mathieson's sentence was imposed in violation of the law due to defense counsel Daniel F. Daly's ineffectiveness.

**Ground Eight:** Mathieson's unlawful sentence was not corrected due to appellate counsel Daniel F. Daly's ineffectiveness.

**Ground Nine:** Mathieson's conviction and/or his sentence is unlawful due to defense/appellate counsel Daniel F. Daly's conflict of interest.

**Ground Eleven:**     Mathieson's conviction is unlawful due to defense/appellate counsel Daniel F. Daly's ineffectiveness.

All of the foregoing grounds relate in one way or another to a claim of ineffective assistance of counsel. A lawyer is presumed to be competent to assist a defendant and, therefore, the burden is on the defendant to demonstrate the denial of the effective assistance of counsel. United States v. Cronic, 466 U.S. 648, 658 (1984).

Different attorneys will handle the same matter in different ways, all of them may be within the bounds of professional norms. Therefore, when reviewing the manner in which an attorney handled a particular issue, the Court is not to look at what was possible or prudent or appropriate, but only at what was constitutionally compelled. Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (*en banc*), *cert. denied*, 531 U.S. 1204 (2001). The burden of persuasion is on the Petitioner to prove that counsel's performance was unreasonable. Vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim. Tejada v. Dugger, 941 F.2d 1551 (11th Cir. 1991), *cert. denied*, 502 U.S. 1105 (1992).

Ground six was addressed in the previous section concerning Petitioner's argument that his guilty plea was not knowing and voluntary. It is addressed again here because Mathieson attempts to make the same argument in the guise of an ineffective assistance of counsel claim. Petitioner discharged his first lawyer and was appointed Fred Vollrath,

Esquire, as counsel.  Mr. Vollrath represented Petitioner through the entry of his guilty plea.[1]

Immediately after the Court accepted both his and Carratala's guilty pleas, Petitioner made various attempts to have his guilty plea withdrawn.  His claim that Vollrath did not give him proper advice is one such attempt.[2]  However, all of his claims about Vollrath are belied by the terms of Petitioner's written plea agreement and his statements under oath on the record:

> THE COURT: Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow determining the sentence in a criminal case.
>
> Have you and your attorney talked about how the sentencing guidelines might apply in your case?
>
> DEFENDANT MATHIESON: Yes, we have, Your Honor.
>
> THE COURT: Do you understand that the Court will not be able to determine the guideline sentence for your case until after the presentence report has been completed, and you and the Government have had an opportunity to challenge the reported facts and the application of the guidelines recommended by the probation officer, and that the sentence imposed may be different from any estimate your attorney may have given you?
>
> DEFENDANT MATHIESON: Yes, I understand that.

---

[1] Mathieson did not enter his guilty plea until minutes before the deadline set by the Government.  Petitioner asserts that he only did so to accommodate his co-defendant Carratala since the Government would not accept Carratala's guilty plea unless Mathieson also pled guilty.

[2] Petitioner claims that Vollrath misled him about the guidelines' calculation and did not advise him that the Court may upwardly depart.

THE COURT: Do you also understand that after your guideline range has been determined, the Court has the authority in some circumstances to depart from the guidelines and impose a sentence that is more severe or less severe than the sentence called for by the guidelines?

DEFENDANT MATHIESON: Yes, I understand that.

As evidenced above, Mathieson was told by the Court that the sentencing guidelines might differ from the estimate given by his attorney and that it had the authority to upwardly depart to the statutory maximum. Moreover, Petitioner's plea agreement clearly provided that the Court was not bound by the guideline calculation and might upwardly depart. The Court did upwardly depart to the statutory maximum. Petitioner had protected himself against such an eventuality by preserving the right to appeal an upward departure. He did appeal and lost. Further, his statements made in open Court establish that he well understood his plea agreement and was satisfied with the advice of his attorney.

Petitioner's other claims of ineffective assistance of counsel concern Dan Daly's attempts to have his guilty plea withdrawn, and Daly's performance at sentencing and on appeal. [3] During the sentencing process, which lasted three days, Petitioner asked and was allowed to represent himself with Daly remaining as stand-by counsel. Interestingly, Petitioner does not blame himself for any of the alleged shortcomings he now perceives as having occurred during his sentencing.

---

[3] Following the entry of his guilty plea, Petitioner requested a new attorney and was appointed Dan Daly.

Petitioner claims that Daly was ineffective for (1) not informing the Court that Vollrath had been ineffective in advising him about his guilty plea; (2) failing to address all the objections to the presentence report that Petitioner thought he should make at sentencing; (3) not asking for additional time when the probation officer made "spontaneous guideline determinations" at his second sentencing hearing; and (4) failing to inform the Court, as stand by counsel, that the Government breached the plea agreement as previously discussed herein.

The failure to make some arguments and not others is a tactical decision and is not sufficient to support an ineffective assistance of counsel claim. Adams v. Wainwright, 709 F.2d 1443 (11th Cir. 1983). Monday morning quarterbacking an attorney's reasonable tactical decisions does not show them to be ineffective. Adams v. Balkcom, 688 F.2d 934 (11th Cir. 1982). In light of the facts admitted by Petitioner in his plea agreement, together with the plain written descriptions of how the various sentencing factors could be considered by the Court, it is apparent that all of Petitioner's ineffective assistance of counsel claims are meritless.

Petitioner further claims that he received ineffective assistance of counsel from Daly on appeal. The standard of proof and review are the same in the context of ineffective assistance of appellate counsel as in the context of ineffective assistance of trial counsel. Duest v. Singletary, 967 F.2d 472, 477 n.4 (11th Cir. 1992). In this case, Petitioner must first show that his appellate counsel was objectively unreasonable in not raising the omitted issue. Smith v. Robbins, 528 U.S. 259 (2000). However, appellate counsel who files a merits brief need not raise every non-frivolous claim. Jones v. Barnes, 463 U.S. 745, 754 (1983)

(effective appellate counsel "winnows out" weaker arguments even though weaker arguments may be meritorious). The exercise of judgment involved in framing an appeal makes it "difficult to demonstrate that [appellate] counsel was incompetent" under Strickland for omitting a particular argument. Smith v. Robbins, 528 U.S. at 285-86 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")).

To demonstrate prejudice, Petitioner must establish that it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. Smith v. Robbins, 528 U.S. at 286. Petitioner must satisfy both prongs of the Strickland test in order to prevail on his claim of ineffective assistance of appellate counsel. Id. at 289.

Petitioner asserts that all four grounds raised by Daly on appeal were frivolous. (See page 74 of the Amended Memorandum.) It is worth noting that Petitioner raises those same "frivolous" arguments again in his §2255 motion presently before this Court.

The Court has considered the issues that Petitioner now asserts should have been raised on appeal, has considered their merits, and has determined that Mr. Daly was not deficient in his performance in not raising them on appeal. Therefore, these grounds will be denied.

> **Ground Nine:**　　　Mathieson's conviction and/or his sentence is unlawful due to defense/appellate counsel Daniel F. Daly's conflict of interest.

In support of this ground, Petitioner argues that Daly had a conflict of interest in bringing before the Court Daly's own ineffective assistance of counsel. The acts that

Petitioner asserts constitute ineffective assistance of counsel have been addressed above and determined to be without merit. Mr. Daly has not been shown to have been deficient in any performance in this case. Therefore, this ground will be denied.

> **Ground Ten:** Mathieson's sentence is unlawful due to the District Court's imposition of improper orders of restitution.

In support of ground ten, Petitioner argues that the Court's restitution was improper for:

1. including victims outside those identified in the plea agreement;

2. ordering restitution for victims of crimes which occurred prior to the enactment of the Mandatory Victims' Restitution Act, 18 U.S.C. §3663A; and

3. not determining the Petitioner's ability to pay restitution.

First, this ground has been procedurally defaulted because it was not raised on direct appeal. Ordinarily, claims that are available and not raised on direct appeal are procedurally defaulted and barred from consideration on collateral review absent a showing of cause and actual prejudice or actual innocence. Bousley v. United States, 523 U.S. 614 (1998). Petitioner has shown neither cause nor actual innocence.

Even had it not been procedurally defaulted, this ground would fail. In his plea agreement, Petitioner acknowledged that the Court may order him to make restitution to any victim of his racketeering offense pursuant to 18 U.S.C. §3663 committed on or after November 1, 1997. (See paragraph B.1 of the plea agreement.) 18 U.S.C. §3663A(a)(2) provides:

> For the purposes of this section, the term "victim" means a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

The restitution is to include all reasonable foreseeable losses caused to the victims of the conspiracy or scheme. United States v. Obasohan, 73 F.3d 309 (11th Cir. 1996). The conspiracy to which Petitioner pled guilty extended from before and ran after the enactment of the Mandatory Victims' Restitution Act of 1996 ("MVRA") on April 24, 1996. Therefore, the MVRA is controlling for the entire period of the conspiracy. United States v. Futrell, 209 F.3d 1286 (11th Cir. 2000).

**Ground Four:**  Mathieson's sentence was imposed in violation of his right to fair and impartial treatment by the Court.

**Ground Twelve:**  Mathieson's conviction is unlawful due to the District Court judge's bias, prejudice, and lack of impartiality towards Mathieson.

In support of these two grounds, Petitioner argues that this Court was biased and prejudiced and should therefore vacate his sentence. He asserts the bias and prejudice is evidenced by this Court's judicial acts of:

1. entering an Order striking his motion for reconsideration of the Order adopting the Magistrate's Recommendation to Deny his Motion to Discharge Counsel;

2. adopting erroneous guidelines in his sentencing;

3. imposing an illegal sentence; and

4. appointing Mr. Daly as his appellate counsel.

He also argues that statements made by this Court in denying his ex parte motion to withdraw his guilty plea because of his mental, emotional or psychological disorders evidence bias. He does not identify the particular statements, but apparently they expressed the Court's reasoning in determining that Petitioner's guilty plea was knowingly and voluntarily entered and not the product of any mental or psychological disorder.

Being ruled against is not evidence of bias. Like his ineffective assistance of counsel claims, these claims by Petitioner are just one more attempt to set aside his sentence and underlying guilty plea. These issues have been previously discussed herein and found to be without merit.

Therefore, this ground will be denied.

**Ground Fourteen:** The government committed a <u>Brady</u> violation when it failed to disclose Grand Jury records to the Petitioner prior to the entering of his guilty plea.

Petitioner raised ground fourteen for the first time in his Amended Memorandum in support of his motion. His §2255 motion makes no mention of any alleged <u>Brady</u> violation on the part of the Government. Mathieson now argues that the Government committed a <u>Brady</u> violation when it failed to disclose Grand Jury records to the Petitioner prior to entering his guilty plea. The due process of the Fifth Amendment to the Constitution imposes an affirmative duty on the prosecution to produce at the appropriate time requested evidence that is materially favorable to the defendant, either as direct or impeaching evidence. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

To establish a <u>Brady</u> violation, Petitioner must prove:

1.      That the Government possessed evidence favorable to the Petitioner;

2.      That the Petitioner does not possess the evidence nor could he obtain it himself with any reasonable diligence;

3.      That the prosecution suppressed the favorable evidence; and

4.      That had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

United States v. Bailey, 123 F.3d 1381, 1397 (11th Cir. 1997).  The Constitution does not require that the prosecution make a complete and detailed accounting to a defendant of all the results of an investigation.  Moore v. Illinois, 408 U.S. 786 (1972).

In support of this ground, Petitioner makes a conclusory argument that the "prosecution team" presented "unfounded, misleading, conclusory, and totally fabricated testimony regarding (amongst other issues) the alleged start date of the RICO conspiracy alleged."  Additionally, Petitioner makes what appears to be a Fourth Amendment argument that the "prosecution team" presented to the Grand Jury Petitioner's "list" of burglaries which had been obtained from Petitioner at the time of his arrest.  He argues that the prosecutors deliberately manufactured federal jurisdiction over what should have been a state level burglary case.

First, the facts admitted by Petitioner in his plea agreement clearly support federal jurisdiction in this case.  (See Facts Basis, B.9 of Plea Agreement.  See also B.5 of Plea Agreement in which Mathieson agrees the Court has jurisdiction.)  Second, Petitioner does not support how the "false and wholly fabricated testimony" allegedly presented to the Grand

Jury would have altered the outcome of his plea or trial in the face of his admitted facts. And, third, he fails to show, other than by his bald assertions, that had the Grand Jury evidence been disclosed to him before he entered his guilty plea, a reasonable probability existed that the outcome of his proceedings would have been different. The Grand Jury evidence would not change the facts that Mathieson acknowledged the Government could prove at trial.

For the foregoing reasons, this ground will be denied.

## Conclusion

Having addressed each of the grounds raised by Petitioner, and having determined that they are meritless, the §2255 motion will be denied.

It is therefore ORDERED AND ADJUDGED that:

1.     Petitioner's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. §2255 (CV Dkt. #1) is DENIED.

2.     The Clerk is to enter judgment for Respondent, United States of America, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on June 12, 2006.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Counsel/Parties of Record

F:\Docs\2004\04-cv-265.Mathieson deny 2255.wpd